Perella Weinberg Partners LLC v Kramer (2024 NY Slip Op 04349)

Perella Weinberg Partners LLC v Kramer

2024 NY Slip Op 04349

Decided on August 29, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: August 29, 2024

Before: Kern, J.P., Kapnick, Gesmer, González, O'Neill Levy, JJ. 

Index No. 653488/15, 595812/15 Appeal No. 2477 Case No. 2023-03656 

[*1]Perella Weinberg Partners LLC, et al., Respondents,
v
Michael A. Kramer, et al., Appellants. (And a Third-Party Action.)

Quinn Emanuel Urquhart & Sullivan LLP, New York (Maaren A. Shah of counsel), for appellants.
Gibson Dunn & Crutcher, LLP, New York (Christopher D. Belelieu of counsel), for respondents.

Order, Supreme Court, New York County (Robert R. Reed, J.), entered May 25, 2023, which denied defendants' motion for partial summary judgment and granted in part plaintiffs' motion for summary judgment, unanimously modified, on the law, to grant defendants' motion as to breach of the client nonsolicitation provisions regarding Monsanto Company and Caesars Entertainment Operating Company, and otherwise affirmed, without costs.
The court properly granted plaintiffs' Perella Weinberg Partners LLC and others' motion for summary judgment to the extent of declaring that the personnel nonsolicitation covenant is enforceable. The enforceability of the personnel nonsolicitation clause is determined using the three-factor test from BDO Seidman v Hirshberg (93 NY2d 382 [1999]). The personnel nonsolicitation covenant is reasonable and therefore enforceable if it: "(1) is no greater than is required for the protection of the legitimate interest of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public. A violation of any prong renders the covenant invalid" (id. at 388-389 [internal citation omitted]).
Plaintiff financial services firm has sufficiently established that its personnel nonsolicitation clause satisfies all three factors of the BDO Seidman test. As to the first factor, an employer has a legitimate interest in enforcing a personnel nonsolicitation covenant if its employee has cultivated or developed personal relationships with clients through the use of the employer's resources (see Genesee Val. Trust Co. v Waterford Group, LLC, 130 AD3d 1555, 1558 [4th Dept 2015]; Renaissance Nutrition, Inc. v Jarrett, 2012 WL 42171, *3, 4, 2012 US Dist LEXIS 2490, *8, 13 [WD NY, Jan. 9, 2012, No. 08-CV-800S]). In this case, plaintiff has sufficiently established that the employees solicited client relationships while employed by plaintiff and using plaintiff's resources. Plaintiff submitted records showing that the solicited employees spent eight years working for plaintiff; that the solicited employees utilized expense accounts to support their work with plaintiff's clients; that the solicited employees were tasked with forging relationships with plaintiff's clients, and that these employees were paid substantial compensation by plaintiff to do so before they were terminated.
The court also properly found that the personnel nonsolicitation clause does not impose undue hardship on the employees and is not injurious to the public. To the extent that defendants argue that the clause is too broad to be enforced as written, the court has the "power to sever and grant partial enforcement for an overbroad restrictive covenant" (BDO Seidman, 93 NY2d at 394).
The court should have granted defendants' motion for summary judgment dismissing plaintiff's claims for breach of the client nonsolicitation provision regarding Monsanto and Caesars because defendants submitted evidence establishing that they did not solicit either [*2]client and plaintiff failed to present evidence sufficient to raise an issue of fact. With regard to Monsanto, its general counsel testified at his deposition that defendants did not solicit Monsanto, but that Monsanto sought out defendants because its relationship with defendant Michael Kramer long pre-dated Kramer's employment at plaintiff. Plaintiff proffered no evidence to rebut the general counsel's statement and it cannot defeat summary judgment by asserting the hope that cross-examination or impeachment will overcome the sworn statement (see Hariri v Amper, 51 AD3d 146, 152 [1st Dept 2008]). Similarly, with regard to Caesars, the documentary evidence demonstrated that defendants did not attempt to solicit Caesars. Rather, it was Caesars that sought a way to keep defendants involved on the project, and that urged a negotiation, ultimately unsuccessful, to have plaintiff and defendants work together.
However, the court properly declined to grant defendants' motion for summary judgment dismissing plaintiffs' claims for breach of the client nonsolicitation provisions as to Fidelity Management and Research Co. and the creditors of Alpha Natural Resources, Inc. The evidence presented raises issues of fact as to whether defendants solicited Fidelity and the Alpha creditors' business. Specifically, Fidelity's managing director averred that Kramer called him prior to leaving plaintiff's employ and informed him of his plans to leave, stating his expectation that several of his colleagues would be leaving with him and continuing to work together at another firm. Defendants do not point to any evidence showing that there was no solicitation of Fidelity. Further, in a June 19, 2015 email, Kramer contacted a senior lender to Alpha and offered to pitch his new company's services, stating that he had unique insights and access to Alpha that he would like to share as well as direct access to Alpha's senior management team. To the extent defendants argue that the Alpha creditors could not be covered by the client nonsolicitation clause because they were not plaintiff's clients, this argument is unavailing. The client nonsolicitation clause applies to prospective clients and the undisputed evidence established that the Alpha creditors were identified as prospective clients of plaintiff.
The court correctly held that neither party is entitled to summary judgment on defendants' counterclaim for breach of contract for failure to pay deferred compensation. On a prior appeal, Perella Weinberg Partners LLC v Kramer (153 AD3d 443 [1st Dept 2017]), we held that the evidence presented gave rise to conflicting reasonable commercial interpretations of the deferred compensation amount election forms regarding whether the forms incorporated the forfeiture provisions of the original deferred compensation agreement. Therefore, we determined that it would be necessary for a jury to consider extrinsic sources of evidence and ultimately decide the issue. The subsequently discovered [*3]2011 presentation documents from plaintiff's CFO do not resolve the factual issue we identified in our prior determination.
Finally, plaintiff's argument that the forfeiture provisions of the deferred compensation agreement are enforceable regardless of whether or not the underlying restrictive covenants are reasonable based on the employee choice doctrine was not
raised below and we decline to consider it for the first time here (see Chadha v Wahedna, 206 AD3d 523, 525 [1st Dept 2022]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: August 29, 2024